UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARLOS RUIZ,<br><br>   Plaintiff<br><br>v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, et. al.,<br><br>   Defendants | Case No.: 3:18-cv-00206-RCJ -WGC<br><br>**Report & Recommendation of United States Magistrate Judge**<br><br>Re: ECF No. 30 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Preliminary Injunction. (ECF No. 30.) Defendants filed a response. (ECF Nos. 35 35-1 to 35-3.) Plaintiff filed a reply. (ECF No. 38.)

After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint (FAC), ECF No. 6.) The events giving rise to this action took place when Plaintiff was housed at Lovelock Correctional Center (LCC).

The court screened the FAC, and determined Plaintiff could proceed with claims under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). (ECF No. 9.)

Specifically, in Count I, Plaintiff was allowed to proceed with Free Exercise Clause and RLUIPA claims based on allegations that Plaintiff observes Messianic Judaism, which requires holy days to be observed on the actual date of the holy days and to use matzah bread and grape juice on certain holy days. Plaintiff claims that NDOC's Administrative Regulation (AR) 810 restricts his ability to observe the Messianic holy days on their actual dates, and does not provide matzah or grape juice to indigent Messiancs for certain hold days. For the free exercise claim, Plaintiff was allowed to proceed against Baker and Carpenter, and also against Dzurenda, Sisolak, Ford and Cegavske (the latter four were allowed to be sued only for injunctive relief). For the RLUIPA claim, Plaintiff was allowed to proceed against Baker, Carpenter, Dzurenda, Sisolak, Ford and Cegavske (all were allowed to be sued for injunctive relief only).

In Count II, Plaintiff was allowed to proceed with free exercise and RLUIPA claims based on allegations that his faith requires him to eat kosher meals, but the common fare food is not kosher and that AR 814 does not correctly set forth kosher guidelines. The free exercise claim was allowed to proceed against defendants Henry, Rosskam, Stammerjohn, Baker, Wickham, and Carpenter. The RLUIPA claim was allowed to proceed against Dzurenda, Sisolak, Ford, Cegavske, Rosskam, Henry, Stammerjohn, Baker, Carpenter, and the Doe Chief Medical Officer, when Plaintiff learns his or her identity, for injunctive relief only.

Defendant Rosskamm has since been dismissed for failure to timely serve him under Federal Rule of Civil Procedure 4(m).

Plaintiff requests an injunction ordering Defendants to: (1) allow Messianic Judaism adherents to keep their holy day observances on the actual dates; (2) provide Messianic Judaism adherents with meals for their feast days, and Matzah and Grape Juice on their sabbath and high sabbath services; (3) give Messianic Judaism adherents scripturally kosher (organic) foods; and

(4) stop using pressure to enforce orthodoxy by its "sincerity test" based upon food consumption that it considers not to be in conformity with an orthodox view of religion.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

In addition, in seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 635 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally." *Id.* (quoting *De Beers Consl. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

### III. DISCUSSION

A. Religious Rights at Issue

    1. Free Exercise Clause

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

To implicate the Free Exercise Clause, a prisoner must first establish his belief is both sincerely held and rooted in religion. *See Shakur*, 514 F.3d at 884-85. Then, a person asserting a free exercise claim must show "that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citation omitted). "A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id*. (citation and internal quotation marks omitted).

"[A]lleged infringements of a prisoners' free exercise rights are judged under a reasonableness test [that is] less restrictive than that ordinarily applied to alleged infringement of fundamental constitutional rights." *Id*. (citing *O'Lone*, 482 U.S. at 349). "The challenged conduct

is valid if it is reasonably related to legitimate penological interests." *Id*. (quotation marks omitted, citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The "reasonableness" factors outlined in *Turner* are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

### 2. RLUIPA

Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

"The Supreme Court has recognized RULIPA as … [a] 'congressional effort[ ] to accord religious exercise heightened protection from government-imposed burdens[.]" *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). Nevertheless, "[c]ourts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." *Hartmann*, 707 F.3d at 1124 (internal quotation marks and citation omitted).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief …, and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted). A substantial burden "must impose a significantly great restriction or onus upon such exercise." *Greene*, 513 F.3d at 987 (quoting *San Jose Christian Coll v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that burden furthers "a compelling interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b); *Holt*, 135 S.Ct. at 857 (citation omitted).

**B. Holy Days**

Plaintiff states that Messianic Judaism requires its adherents to observe the following holy days: (1) weekly sabbath services; (2) Passover and Matzah (8 days); (3) Pentecost; (4) Yom Teruah Trumpets; (5) Yom Kippur; (6) Sukkot Tabernacles and last great day (8 days); and (7) new moon celebrations (once a month every 29-30 days apart).

Plaintiff states that on January 18, 2018, Associate Warden of Programs Tara Carpenter issued a memorandum to all LCC inmates stating that beginning on February 1, 2018, none of the faith group's would be allowed to keep their holy day observances on the actual dates they occur.

The memorandum, attached as an exhibit to Plaintiff's pleading, states that effective February 1, 2018, LCC would be implementing a new chapel schedule to conform with AR 810 and NDOC/s Religious Practice Manual and to ensure there is adequate staff oversight of chapel services. It states that "all special holy days will be scheduled in conjunction with the regularly

scheduled religious services time slots;" however, "if there is a need for special consideration the institutional staff will be made aware." (ECF No. 6 at 32.)

NDOC's religious practice manual defines "worship service" as a "weekly meeting time for each Faith Group consisting of up to at least one (1) hour." It states that there is "no entitlement beyond one (1) hour per week." (ECF No. 30 at 41.)

It further provides that holy days are permitted as documented by faith tenet, within available time, space and security resources. (ECF No. 30 at 47.) It goes on to state that each facility "may attempt to accommodate all recognized Faith Groups in celebrating their AR 810 recognized holy days (as set forth in the Faith Group Overview) on the actual day on which they occur." This is to be "considered in light of the institution/facility's staffing, yard movement, impact on other programs, cost, resources, and safety and security issues." Facilities are not, however, mandated to allow the celebration on the actual date, "and may allow the holy day to be celebrated on an alternate date including during the Faith Group's normally scheduled weekly worship day." If a facility does grant permission to celebrate a holy day on the actual date of the holy day, the prison states that this does not set a precedent to allow future holy days to be celebrated on the actual date. Furthermore, if a group celebrates their holy day on a day other than their regularly scheduled worship day, they may also meet on their regularly scheduled worship day. (ECF No. 30 at 47.)

The NDOC Religious Practice Manual discusses categories of inmate requests related to the practice of religion, which includes a request for a special holy day service or meeting and requesting a new or additional religious service. (*Id*. at 48.) A request must be made on the inmate request form (DOC 3012) for a new or additional religious service to the chaplain. (*Id.* at 50.) For a request for a special holy day service/meeting, the inmate must submit a completed

request for a recognized holy day service/food (DOC 3529) to the chaplain at least 30 but no more than 45 days before the holy day. The chaplain will then make a recommendation to grant or deny the request based on several factors, including: whether there is minimal inconvenience to the overall operation and security to the institution; if significant intrusion/disruption will result; the degree to which the proposed day is deemed a religiously significant or important day of worship. The warden will make the final determination on the request. In addition, inmates are required to register for special religious holy days 30 to 45 days before the holy day. Every special holy day service/meeting must be requested and considered separately. The days will not be held at the days/times chosen by the inmate/group if they conflict with institutional security, operational and management needs or would otherwise disrupt the orderly operation of the institution/facility. (*Id.* at 51-52.)

The NDOC Faith Group Overview lists the following holy days for Messianic Judaism: Chanukah, Shabbat (weekly from sundown Friday to sundown Saturday), Purim, Passover (days 1, 2, 7, 8), Shavuot (days 1, 2), Rosh Hashanah (days 1 and 2), Yom Kippur, Sukkot (days 1, 2, 8, 9). It lists worship for holy days and weekly subject to scheduling approval. (ECF No. 30 at 82.)

Plaintiff has not demonstrated he is likely to succeed on the merits, or that he is likely to suffer irreparable harm in the absence of injunctive relief. The LCC memorandum was issued in January of 2018. This motion was filed in December of 2020, but Plaintiff does not tell the court what holy days he has not been able to observe on the actual holy day, or how often this has occurred. Moreover, AR 810 and the NDOC Religious Practice Manual invite an inmate to make a request for a special holy day service. The LCC memorandum also said that inmates could make a request for a special accommodation. Plaintiff has not indicated that he has pursued these

avenues and been unsuccessful. Therefore, his request for injunctive relief in this regard should be denied at this time.

**C. Matzah and Grape Juice**

Plaintiff was not allowed to proceed with a claim that he is not provided with meals for his feast days. Instead, his claim is limited to the allegation that Defendants are not providing matzah and grape juice to Messianic Judaism adherents for certain holy days. To the extent he requests injunctive relief relative to the former issue, that request should be denied as not sufficiently related to the claims proceeding in this action.

Insofar as matzah and grape juice are concerned, Plaintiff states that his faith uses matzah and grape juice on the sabbath and high sabbath days. AR 810 recognizes these as allowable group items, but Plaintiff claims that the NDOC Religious practice Manual requires all faith groups to purchase food items themselves, regardless of whether they are indigent.

Plaintiff states that he is indigent and has no real or steady income and depends on NDOC to provide him with matzah and grape juice for his sabbath and high sabbath services.

NDOC's faith group overview does list grape juice and matzoh as allowable group items. (ECF No. 30 at 82.) NDOC's Religious Practice Manual states that faith groups that require special consumables for worship such as grape juice, bread or kosher items, are responsible for obtaining those items themselves from the canteen, an approved vendor, or an approved religious organization. In addition, outside volunteers or sponsors may provide consumables for special religious holidays with the prior approval of the warden. (ECF No. 30 at 39.)

Again, Plaintiff does not provide evidence that he has requested and has been denied grape juice and matzah, or that he has sought to obtain grape juice and matzah through an outside volunteer or sponsor and has been unsuccessful.

Moreover, Plaintiff states in his motion that he is indigent, but provides no evidence concerning the status of his inmate account, or the pricing of grape juice and matzoh from the canteen or another approved vendor so the court can determine his indigency/ability to purchase these items for himself. Defendants provide an exhibit containing a summary of one of Plaintiff's grievances where he states that he was trying to purchase music credit via the LCC canteen for his MP3 music player (ECF No. 35-3 at 12), which reinforces the need for evidence of Plaintiff's indigency/inability to pay for grape juice and matzah.

Plaintiff has not demonstrated he is likely to succeed in his claim that NDOC's policy concerning such items violates his religious rights, or that he will suffer irreparable harm in the absence of injunctive relief since it is not clear that he cannot afford the grape juice and matzah. As such, Plaintiff's motion for injunctive relief should be denied insofar as he requests that the court order Defendants to provide him with grape juice and matzah.

**D. Organic Foods**

Plaintiff states that Messianics eat foods that are identified as "clean-kosher" as defined by scriptures. Messianics are not supposed to eat meat that is not kosher or has been adulterated with chemicals or drugs such as growth hormones or antibiotics. They cannot eat processed meats such as luncheon meats, hot dogs, or sausages. Messianics are also supposed to eat organic/kosher fruits and vegetables that only use clean animal dung/manure for fertilizer, and use no chemical pesticides, herbicides, or fertilizers. He claims that AR 814 provides for non-kosher (non-organic) vegetables, fruits and drinks, and that Messianics do not follow rabbinical determinations of what is kosher for fruits, vegetables and drinks.

To reiterate, Plaintiff says he is not requesting a rabbinical orthodox kosher diet, but the scripturally kosher diet his faith requires: organically raised animals and unprocessed meats, and

organically grown fruits and vegetables without chemicals, fertilizers, pesticides, or herbicides, and organic drinks without chemicals as additives.

AR 814 governs NDOC's inmate Common Fare/Religious Diet. (ECF No. 30 at 91.) The Common Fare menu is certified to meet or exceed Kosher Orthodox Union standards. (*Id*. at 92.)

Preliminarily, Plaintiff provides the court with almost no specific factual information concerning the meals he receives at NDOC other than to categorically state that he requires an organic diet for his faith. Moreover, he fails to provide an analysis of the *Turner* factors for his free exercise claim. Similarly, Plaintiff only provides a conclusory statement that his religion has been substantially burdened as a result of the failure to provide an organic kosher diet, without providing any specific factual discussion of why this is the case.

Insofar as the Free Exercise Claim is concerned, *Turner* requires the court to look at whether there was a legitimate penological interest that is rationally related to the disputed regulation. Under RULIPA, the court must look at whether the policy is supported by a compelling interest that is narrowly tailored. Defendants state that providing Plaintiff with the requested diet would increase costs and introduce security issues. (ECF No. 35 at 12.) Just as Plaintiff has only provided the court with conclusory statements concerning the alleged violation of his rights, Defendants' arguments that providing Plaintiff an organic kosher meal would be cost prohibitive or pose a security issue are not supported by any specific evidence, *i.e.*, a declaration with specific facts regarding cost or identifying what security issues may arise from serving Plaintiff organic kosher meals.

At this point, the court does not have enough information from either side to determine whether Plaintiff is likely to succeed on the merits or is likely to suffer irreparable harm in the

absence of injunctive relief. As a result, his motion should be denied with respect to this aspect of his religious rights claims at this time.

**E. Sincerity Test**

Plaintiff asks the court to direct NDOC to stop using pressure to enforce orthodoxy by its "sincerity test" based upon food consumption that it considers not to be in conformity with an orthodox view of religion. Plaintiff is not proceeding with a claim that this purported conduct by NDOC violations his constitutional or other federal rights, and so his request for injunctive relief is not sufficiently related to a claim proceeding in this action. Therefore, his request for such relief should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for a preliminary injunction (ECF No. 30); however, the denial should be **WITHOUT PREJUDICE** so that Plaintiff can raise a motion that is properly supported and addresses only the claims proceeding in this action.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 28, 2021

                                             *William G. Cobb*
                                             William G. Cobb
                                             United States Magistrate Judge