AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1150
E-mail: drands@ag.nv.gov

*Attorneys for Defendants
Maribelle Henry, Colette Stammerjohn,
Harold Wickham, Renee Baker,
Charles Daniels, and Tara Carpenter*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

CARLOS RUIZ,

            Plaintiff,

vs.

NDOC, et al.,

            Defendants.

Case No.  3:18-cv-00206-RCJ-CSD

**PROPOSED JOINT PRETRIAL ORDER**

Following pretrial proceedings in this case,

IT IS ORDERED:

**I.    NATURE OF ACTION AND CONTENTIONS OF THE PARTIES**

    **A.    NATURE OF ACTION**

This is a *pro se* prisoner civil rights action brought by inmate Carlos Ruiz (Plaintiff), asserting claims arising under 42 U.S.C. § 1983.

Plaintiff filed a First Amended Complaint (FAC); two Counts survived screening. Each count has allegations related to the First Amendment: (1) free exercise of religion, and (2) Religious Land Use and Institutionalized Persons Act (RLUIPA).

This Court granted summary judgment to the Defendants, Cegavske, Ford, Sisolak and Dzurenda. The Court allowed the other First Amendment Counts to proceed against the remaining Defendants. Therefore, this matter is proceeding on Plaintiff's Count I, where he claims his right to worship on the actual holy days of his religion was infringed and that he was denied access to grape

juice and matzo for worship. It is also proceeding on his Count II claim that his access to an organic kosher menu was denied by the Defendants, in violation of his First Amendment rights. (ECF No. 82)

### B. CONTENTIONS OF THE PARTIES

#### 1. Plaintiff's Contentions

Plaintiff is registered as being a practitioner of "Messianic Judaism." Plaintiff claims he has been a sincere member of the Messianic Judaism assembly at LCC since May 2014 and eventually became the facilitator-leader. (ECF No. 6 at 8) On January 18, 2018, Carpenter issued a memo to all inmates, effective February 1, 2018, stating changes would occur in conjunction with administrative regulation ("AR") 810. (Id. at 10) The memo stated that all holy days would be scheduled in conjunction with the regularly scheduled religious services' time slots and that culinary would no longer provide any religion with anything other than what was required by AR 810 and/or the religious practices' manual. (Id. at 10)

Plaintiff alleges Defendants, through AR 810, deny Messianic Judaism practitioners from keeping their appointed holy days on the days they occur and refuse to provide grape juice and matzah for Messianic Sabbath services and high Sabbaths per AR 810. (ECF No. 6 at 10) In the FAC, Plaintiff provides the religious scripture mandating the holy days. (Id at 11).

Prior to Carpenter's memo, Plaintiff alleges Messianics were permitted to keep their holy days on the actual dates they occurred, except for new moons because they were not listed in the faith overview chart. (ECF No. 6 at 12). By failing to observe holy days on their actual dates, Plaintiff alleges Messianics commit sin which leads to death. (Id. at 13)

**Allegations regarding Count II:** On March 27, 2017, Plaintiff submitted an informal grievance challenging the common fare/religious diet as not being kosher as required by Messianic scripture. (ECF No. 6 at 16) Plaintiff also requested to eat his meals in his cell because the chow hall was "filthy." (Id.) According to Plaintiff, Henry responded and told Plaintiff to contact Rabbi Rosskamm. (Id. at 16) Defendant Stammerjohn denied the grievance and stated that the food was kosher, and the kitchen was cleaned. (Id. at 17) Plaintiff appealed and argued that there was no cleaning between units, the kitchen was unsanitary, and that it was unkosher to eat in the chow hall. Baker responded that everything was kosher by rabbinical authority, Rabbi Rosskamm. (Id. at 17)

On June 25, 2017, Plaintiff kited Henry about the common fare menu, holy day foods, limited meats on regular meals, compelling one to become a vegetarian, serving cold foods on the Sabbath, targeting of inmates to strict practices, non-kosher meals, cleanliness, and insufficient calories. Henry denied the grievance. (ECF No. 6 at 17) On July 5, 2017, Plaintiff appealed and stated that he talked to the Rabbi Rosskamm and that they disagreed on what was kosher. (Id.) Plaintiff notes that the Rabbi was not Plaintiff's recognized religious leader and can't decide what is kosher for Plaintiff. (Id.)

Plaintiff alleges that Messianic scripture requires practitioners to eat *organic* fruits and vegetables and meat, and the general population main line inmates received special holiday foods for New Years, Fourth of July, Thanksgiving, Christmas, and Easter but Messianics only received special foods on Passover. (ECF No. 6 at 20)

  **2.** **Defendants' Contentions**

Defendants contend that the evidence does not support Plaintiff's allegations. Defendants incorporate any Affirmative Defenses from the Answer as it pertains to Defendants. Defendants deny that Plaintiff's constitutional rights have been violated.

**C.** **RELIEF SOUGHT**

Plaintiff seeks declaratory, compensatory and punitive damages.

**II.** **STATEMENT OF JURISDICTION**

This is a civil action commenced under 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**III.** **UNCONTESTED FACTS ADMITTED BY THE PARTIES WHICH REQUIRE NO PROOF**

  1. Mr. Ruiz, in this matter has filed a Complaint alleging violations of his constitutional rights under the Eighth Amendment. (ECF No.9).

  2. At all times relevant in the Complaint, Plaintiff was in lawful custody of the Nevada Department of Corrections ("NDOC") housed at Lovelock Correctional Center (LCC) (ECF No. 9-1 at 2).

  3. Defendant Maribelle Henry was previously employed by the NDOC as the culinary manager.

4. Defendant Collette Stammerjohn is employed by the NDOC as a Correctional Casework Specialist II and was a grievance responder.

5. Defendant Renee Baker was previously employed by the NDOC as the Warden of LCC.

6. Defendant Harold Wickham was previously employed by the NDOC as a Deputy Director of the NDOC.

7. Defendant Tara Carpenter was previously employed by the NDOC as an Associate Warden at LCC.

8. Defendant Charles Daniels is currently the Director of the NDOC.

9. Plaintiff claims he requires an organic kosher diet. (ECF No. 6)

10. The diet served at LCC complies with the reasonable guidelines for a correctional setting.

11. During the time in question, Plaintiff has purchased items from the canteen for personal use that are not Kosher, i.e. summer sausage, shrimp Ramen, Cheetos. Plaintiff also was able to make substantial purchases from the canteen.

12. The common fare menu at LCC is certified Kosher, by a Rabbi.

13. Plaintiff is not currently on the common fare diet, as he was removed for refusing to sign his common fare agreement.

14. Plaintiff has not made requests for special accommodation for special religious services

## IV.  FACTS UNADMITTED THAT WILL NOT BE CONTESTED

The following facts, though not admitted, will not be contested at trial by evidence to the contrary: NONE

## V.  CONTESTED ISSUES OF FACT TO BE TRIED AND DETERMINED UPON TRIAL

### A.  PLAINTIFF'S CONTESTED FACTS

*See* Complaint.

///
///
///
///

Page 4

B.  **DEFENDANTS' CONTESTED FACTS**

1. Whether Plaintiff has met his burden of producing evidence supporting the facts set forth above, i.e. whether he can prove that the individual defendants violated his First Amendment or RLUIPA rights?

2. Whether any form of damages is available to Plaintiff for any alleged failures?

VI.  **CONTESTED ISSUES OF LAW TO BE TRIED AND DETERMINED UPON TRIAL**

A.  **PLAINTIFF**

1. Whether or not the claim against Defendants, violates Plaintiff's Constitutional rights, and do the facts warrant a damage award?

B.  **DEFENDANT**

1. Did Defendant individually violate Plaintiff's constitutional rights?

2. Did Mr. Ruiz prove the elements of a violation of his First Amendment rights? "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). While prisoners retain their First Amendment right to free exercise of religion, it is well recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (internal quotation marks and citations omitted). A prisoner's right to free exercise of his or her religion is necessarily limited by incarceration, and may be curtailed to achieve legitimate correctional goals or to maintain prison security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). To implicate the Free Exercise Clause, a belief must be "sincerely held" and "rooted in religious belief." See *Shakur*, 514 F.3d at 885 (holding that the sincerity test set forth in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), and *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981), determines the applicability of the Free Exercise Clause).

"[T]o merit protection under the free exercise clause of the First Amendment . . . [a] religious claim . . . must satisfy two basic criteria." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981).

"First, the claimant's proffered belief must be sincerely held[.]" Id.  Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Id.*  Further, in order to establish a First Amendment violation, a prisoner must demonstrate that defendants have burdened the practice of his religion without any justification reasonably related to legitimate penological interests.  See *Freeman v. Arpaio*, 125 F.3d 732 at 737 (9th Cir. 1997), abrogated on other grounds by *Shakur*, 514 F.3d at 884 (citing *Turner v. Safely*, 482 U.S. 78, 89 (1987)).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 883-84 (quoting *Turner*, 482 U.S. at 89).  Under *Turner*, the court must balance four factors in determining whether a prison regulation is reasonably related to legitimate penological interests.  The first factor requires that, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89.  Second, the court must determine whether there are "alternative means of exercising the right that remain open to prison inmates." *Id.* at 90.  Third, the court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.*  Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

Plaintiff also brings his claim under RLUIPA, 42 U.S.C. § 2000cc et seq., which provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.
> 42 U.S.C. § 2000cc-1(a).

"Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that the defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*,

418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. Id. at 995. RLUIPA is to be construed broadly in favor of the inmate. See 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution").

Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent" and "a 'substantial burden on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious practice that is compelled by, or central to, a system of religious belief, see 2000cc-5(7)(A); however, the burden must be more than an inconvenience. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2007), aff'd en banc, 535 F.3d 1058, 1068 (9th Cir. 2008) (internal quotations and citations omitted). A burden is substantial under RLUIPA when the state, "denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 1981) (internal quotations omitted).

## VII.  EXHIBITS

**A.  STIPULATED EXHIBITS AS TO AUTHENTICITY AND ADMISSIBILITY**

1. Administrative Regulation 810
2. Administrative Regulation 740.

**B.  STIPULATED EXHIBITS AS TO AUTHENTICITY BUT NOT ADMISSIBILITY**

None.

**C.  PLAINTIFF'S EXHIBITS SUBJECT TO OBJECTIONS**

1. 42 U.S.C. §2000 (RLUIPA)
2. Hallelujah Scriptures
3. Original Grievances and other pertinent Grievances
4. Any and all documents to support claim(s).

5. Any and all documents submitted during discovery to include Dietician's Report.

6. Letter(s), Document(s) from Yahshuas' Assemblies in Yahshuas regarding proper Food Laws.

7. Memo Denying Plaintiff Common Fair Diet

8. Memo Denying Plaintiff Pass-Over Special Food i.e. (Matsah)

9. Kosher Food Menu from 2010

10. Common Fare Diet Food Menu 2022

11. Mainline Food Menu

D. **DEFENDANTS' EXHIBITS SUBJECT TO OBJECTIONS**

1. Plaintiff's Movement History Report;

2. Plaintiff's housing history report;

3. Plaintiff's Grievance file, including all relevant grievances;

4. Certified Judgment(s) of Conviction of Plaintiff for underlying offense (only if needed for impeachment);

5. Plaintiff's Institutional File ("I-File");

6. Plaintiff's NDOC Central File ("C-File");

7. Law Library Logs;

8. Legal Mail Logs for relevant time period;

9. Law Library Brass Slips;

10. Plaintiff's Case Notes as maintained on the NDOC NOTIS system from 2014 to Present.

11. All prison logs, registers, documents, or other form of data pertaining to any and all of Plaintiff's claims.

12. Plaintiff's relevant medical records and kites.

13. Emails relating to this issue.

14. LCC Chapel Schedule.

15. Any and all other exhibits that may support the statements of fact and law cited herein and to rebut Plaintiff's statements, claims, and testimony.

///

16. Any and all other exhibits that rebut witnesses that might be called to respond to claims made by either Plaintiff or any of his proposed witnesses;

**E.  DEPOSITIONS**

1. None.

**VIII. WITNESSES**

**A.  PLAINTIFF'S WITNESSES:**

Plaintiff wishes to reserve the right to call the following persons:

1. Timothy Johnson, #23766 – I/M – LCC – U-5-79-a
2. Brett Doyle – I/M – LCC – U-1A-20-b
3. Ubaldo Urbina – I/M – LCC – U-1B-12-a
4. Rafik Vatenpur – I/M – LCC – U-3B-17-b
5. Glenn Mark Turner – I/M – LCC – U-2A-46-a
6. George Gibbs – I/M – LCC – U-2A-48-b
7. Inmate John Doe 1-6 to be determined.

**B.  DEFENDANT'S WITNESSES:**

Defendants wish to reserve the right to call the following persons:

1. Plaintiff Carlos Ruiz, Inmate, Southern Desert Correctional Center;
2. Renee Baker, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
3. Harold Wickham, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
4. Tara Carpenter, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
5. Maribelle Henry, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
6. Collette Stammerjohn, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

///

7. Charles Daniels, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

8. Scott Davis, Chaplain, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

9. Yisroel Rosskamm, Rabbi, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

10. Custodian(s) of Record for any exhibits identified above, c/o Douglas R. Rands, Office of the Attorney General, 100 N. Carson Street, Carson City, NV 89701-4717, and (775) 684-1100.

11. Any and all rebuttal witnesses that might be called to respond to claims made by either Plaintiff or any of his witnesses.

12. Any and all other witnesses that have personal knowledge supporting Defendant's statements of fact or law cited herein.

13. All witnesses identified by Plaintiff, whether or not called to testify at trial.

14. Chad Ventors, Chaplain, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

15. Nethanjah Childers, Associate Warden, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

Plaintiff and Defendants reserve the right to interpose objections to the calling of any named witness listed above prior to or at trial.

**IX.  AVAILABLE TRIAL DATES**

Plaintiff and Defendants' Counsel expressly understand that the Clerk shall set the trial of this matter at the convenience of the Court's calendar. A jury has been requested.

///
///
///
///
///
///

The following are three weeks in which both parties are available:

February 20, 2023

February 20, 2023

March 13, 2023

DATED this 23 day of May, 2022.

|  |  |
|---|---|
| /s/ Carlos Ruiz<br>Carlos Ruiz, #94960<br>*Plaintiff* | AARON D. FORD<br>Attorney General<br>By: /s/ Laura McSwinn for #8685<br>DOUGLAS R. RANDS, Bar No. 3572<br>Senior Deputy Attorney General<br>*Attorneys for Defendants* |

IT IS ORDERED this case is set for jury trial on the stacked calendar on March 13, 2023 at 8:30 AM in Reno Courtroom 3 before Judge Robert C. Jones. Calendar Call is set for Tuesday, February 21, 2023 at 10:00 AM in Reno Courtroom 3 before Judge Robert C. Jones.

DATED: June 29th, 2022

_____
ROBERT C. JONES, UNITED STATES DISTRICT JUDGE