7388612.1.76

Carlos Ruiz #94960
SDCC
PO Box 208
Indian Springs, NV 89070
Plaintiff *pro-per*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARLOS RUIZ,<br>Plaintiff,<br>v.<br>NDOC, *ET AL.*,<br>Defendants. | Case No.: 3:18-cv-00206-RCJ-CSD<br><br>**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS** |

Plaintiff, *pro per*, hereby submits the following Proposed Jury Instructions:

///

///

///

7388612.1.77

## SECTION 1983 CLAIM—INTRODUCTORY INSTRUCTION[1]

The plaintiff brings [his] claim[s] under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

---

[1] - 9TH Cir. Manual of Model Civil Jury Instructions § 9.1.

7388612.1.78

**CAUSATION[2]**

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id.* This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Stevenson v. Koskey, 877 F.2d 1435, 1438 (9th Cir. 1989) (noting that federal courts turn to common law of torts for causation in civil rights cases).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). For example, when deprivation of a protected interest is substantively justified but the procedures were deficient, a plaintiff must show injury from the denial of procedural due process itself and cannot recover damages from the justified deprivation. Carey v. Piphus, 435 U.S. 247, 260-64 (1978); Watson v. City of San Jose, 800 F.3d 1135, 1140-42 (9th Cir. 2015) (expanding types of constitutional tort actions subject to Carey's causation analysis and quoting trial court's damages instruction).

A person deprives another of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "An officer's liability under section 1983 is predicated on his integral participation in the alleged violation." Nicholson v. City of Los Angeles, 935 F.3d 685, 691 (9th Cir. 2019) (quoting Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir.

[2] - 9TH Cir. Manual of Model Civil Jury Instructions § 9.2.

7388612.1.79

2007) (internal quotes omitted)). Thus, an "officer could be held liable where he is just one participant in a sequence of events that gives rise to [the alleged] constitutional violation." Nicholson, 935 F.3d at 692.

[…]

**CONCURRENT CAUSE**

In Jones v. Williams, the Ninth Circuit affirmed a defense verdict in a § 1983 case in which the district judge gave the following "concurrent cause" instruction to address allegations of supervisory and group liability: "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such a case each may be a proximate cause." Jones v. Williams, 297 F.3d 930, 937 n.6 (9th Cir. 2002).

7388612.1.80

**SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL CAPACITY—ELEMENTS AND BURDEN OF PROOF [3]**

In order to prevail on [his] § 1983 claim against the defendant [name of individual defendant], the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the defendant acted under color of state law; and

2. the [act[s]] [failure to act] of the defendant deprived the plaintiff of [his] particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. [[The parties have stipulated] [I instruct you] that the defendant acted under color of state law.]

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements [he] is required to prove under Instruction[s] [18, 24, 26, 30, 31, 33], your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant.

[3] - 9TH Cir. Manual of Model Civil Jury Instructions § 9.3.

7388612.1.81

**SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON OFFICIAL POLICY, PRACTICE OR CUSTOM—ELEMENTS AND BURDEN OF PROOF [4]**

In order to prevail on [his] § 1983 claim against defendant [NDOC] alleging liability based on an official policy, practice, or custom, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. [Defendant's official] acted under color of state law;

2. the act[s] of [defendant's official] deprived the plaintiff of [his] particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions;

3. [Defendant's official] acted pursuant to an expressly adopted official policy [AR 810 and AR 814] or a widespread or longstanding practice or custom of the defendant [NDOC]; and

4. the defendant [NDOC]'s official policy [AR 810 and AR 814] or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by the [defendant's official]; that is, the [NDOC]'s official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. [[The parties have stipulated that] [I instruct you that] [defendant's official] acted under

[4] - 9TH Cir. Manual of Model Civil Jury Instructions § 9.5.

7388612.1.82

color of state law.]

"Official policy" means a formal policy, such as a rule or regulation adopted by the defendant [NDOC], resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

"Practice or custom" means any longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of the defendant [NDOC]. [A practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violator[s] [was] [were] not disciplined, reprimanded or punished.]

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements [he] is required to prove under Instruction[s] [18, 24, 26, 30, 31, 33], your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant.

7388612.1.83

## SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON ACT OF FINAL POLICYMAKER—ELEMENTS AND BURDEN OF PROOF[5]

In order to prevail on [his] § 1983 claim against defendant [NDOC] alleging liability based on the act of a final policymaker, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. [James Dzurenda, Renee Baker, Tara Carpenter] acted under color of state law;

2. the act[s] of [Dzurenda, Baker, Carpenter] deprived the plaintiff of [his] particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions;

3. [Dzurenda, Baker, Carpenter] had final policymaking authority from defendant [NDOC] concerning these act[s];

4. when [Dzurenda, Baker, Carpenter] engaged in these act[s], [he] [she] was acting as a final policymaker for defendant [NDOC]; and

5. the [act[s] of [Dzurenda, Baker, Carpenter] caused the deprivation of the plaintiff's rights; that is, the [NDOC]'s act[s] [were] so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or

[5] - 9TH Cir. Manual of Model Civil Jury Instructions § 9.6.

7388612.1.84

regulation. [[The parties have stipulated that] [I instruct you that] the defendant's [official] [employee] acted under color of state law.]

I instruct you that [Dzurenda, Baker, Carpenter] had final policymaking authority from defendant [NDOC] concerning the act[s] at issue and, therefore, the third element requires no proof.

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements [he] is required to prove under Instruction[s] [18, 24, 26, 30, 31, 33], your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant.

7388612.1.85

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE[6]**

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

---

6 - 9TH Cir. Manual of Model Civil Jury Instructions § 1.6.

7388612 1.86

## WHAT IS EVIDENCE[7]

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

---

[7] - 9TH Cir. Manual of Model Civil Jury Instructions § 1.9.

7388612.1.87

**WHAT IS NOT EVIDENCE[8]**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[8] - 9[TH] Cir. Manual of Model Civil Jury Instructions § 1.10.

7388612.1.88

## DIRECT AND CIRCUMSTANTIAL EVIDENCE[9]

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

[9] - 9TH Cir. Manual of Model Civil Jury Instructions § 1.12.

7388612.1.89

**OUTLINE OF TRIAL[10]**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

[10] - 9TH Cir. Manual of Model Civil Jury Instructions § 1.21.

7388612.1.90

**SELF-REPRESENTED PARTY[11]**

[Carlos Ruiz] is representing [himself] in this trial. This fact must not affect your consideration of the case. Self-represented parties and parties represented by an attorney are entitled to the same fair consideration.

Because [Carlos Ruiz] is acting as [his] own lawyer, you will hear [him] speak at various times during the trial. [He] may make an opening statement and closing argument and may ask questions of witnesses, make objections, and argue legal issues to the court. I want to remind you that when [Carlos Ruiz] speaks in these parts of the trial, [he] is acting as [his] own advocate, and [his] words are not evidence. The only evidence in this case comes from witnesses who testify under oath on the witness stand or by deposition and from exhibits that are admitted into evidence. When a self-represented party testifies, you should treat this testimony just as you would the testimony of any other witness.

[11] - 9TH Cir. Manual of Model Civil Jury Instructions § 1.22.

7388612.1.91

**DUTY TO DELIBERATE[12]**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

[12] - 9TH Cir. Manual of Model Civil Jury Instructions § 3.1.

7388612.1.92

**CONSIDERATION OF EVIDENCE -- CONDUCT OF THE JURY[13]**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

[13] - 9TH Cir. Manual of Model Civil Jury Instructions § 3.2.

7388612.1.93

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

7386612.1.94

**COMMUNICATION WITH COURT**[14]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

[14] - 9TH Cir. Manual of Model Civil Jury Instructions § 3.3.

7388612.1.95

**CREDIBILITY DETERMNATIONS[15]**

It is the jury's province to make any credibility determinations and to resolve any factual disputes.

[15] - First Nat. Mtg. v. Fed. Realty Inv. Trust, 631 F.3d 1058, 1069 (9th Cir. 2011).

7388612.1.96

## GOVERNMENT OFFICIALS ARE CHARGED WITH KNOWLEDGE OF LAW[16]

Government officials are charged with knowledge of constitutional developments, including all available decisional law.

[16] - Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1988).

7388612.1.97

## SUPERVISOR LIABILITY[17]

Evidence that there was a custom or policy would be sufficient to warrant the imposition of official liability. An authorized policymaker who made or ratified a decision that deprived plaintiffs of his constitutional rights would suffice for official liability.

A supervisor can be held liable in their individual capacity if they set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury. Supervisory liability is imposed against a supervisory official in their individual capacity for their own culpable action or inaction in the training, supervision, or control of their subordinates, for their acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

---

[17] - Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

7388612.1.98

## SUPERVISOR LIABILITY[18]

42 U.S.C. § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights ... secured by the Constitution...."

When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur. Claims against such supervisory officials, therefore, do not fail on the state of mind requirement, be it intent, knowledge, or deliberate indifference.

Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.

---

[18] - Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012).

7388612.1.99

**FIRST AMENDMENT**[19]

The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires. Thus, the First Amendment obviously excludes all "governmental regulation of religious beliefs as such." The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma.

[19] - Employment Div. v. Smith, 494 U.S. 872, 877 (1990).

7388612.1.100

## FIRST AND FOURTEENTH DUE PROCESS CLAUSE[20]

There are particular liberties that have constitutional status in their own right, such as freedom of speech and the free exercise of religion, whose deprivation by a State on a classwide as well as an individual basis may violate the Due Process Clause of the Fourteenth Amendment.

---

20 - Hewitt v. Helms, 459 U.S. 460, 486 n.8 (1983).

7388612.1.101

**FIRST AMENDMENT[21]**

The First Amendment provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof .... U.S. Const., amend. I. The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires.

The Supreme Court has explained that the First Amendment obviously excludes all governmental regulation of religious beliefs as such, meaning that the government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma.

The protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.

---

[21] - Parents for Privacy v. Barr, 949 F.3d 1210, 1233-35 (9th Cir. 2020).

7388612.1.102

**FIRST AMENDMENT INJURY[22]**

A First Amendment deprivation presents a cognizable injury standing alone and the PLRA does not bar a separate award of damages to compensate the plaintiff for the First Amendment violation in and of itself.

[22] - Lipton v. County of Orange, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004).

7388612 1.103

**RELIGIOUS BELIEF[23]**

So long as one's faith is religiously based at the time it is asserted, it should not matter, for constitutional purposes, whether that faith derived from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible.

[23] - Hobbie v. Unemployment Appeals Commission, 480 U.S. 136, 144 n.9 (1987).

7388612.1.104

## JUDGING SINCERITY OF BELIEF[24]

Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Among the rights prisoners possess is the right to the free exercise of religion, subject to limitations justified by the considerations underlying our penal system.

To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. "First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to 'so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity.'" Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." Determining whether a claim is "rooted in religious belief" requires analyzing whether the plaintiff's claim is related to his sincerely held religious belief.

[24] - Malik v. Brown, 16 F.3d 330, 332-33 (9th Cir. 1994).

7388612 1.105

**RLUIPA'S APPLICATION TO AR 810**[25]

Plaintiff has alleged in Count ___1___of his complaint that AR 810 is an unconstitutional burden on his religious belief because that state refuses to provide him with *matzah* and grape juice whenever he is allowed to assemble together on *Shabbat* and holy day assemblies. Further, that AR 810 in Count II violates his constitutional; right to assemble on the actual dates of his holy day observances by using the lunar calendar of the scriptures to calculate the year and when it begins and the beginning of each monthly cycle to keep the holy day.

RLUIPA's institutionalized-persons provision compatible with the Establishment Clause because it alleviates exceptional government-created burdens on private religious exercise.

The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine…." Section 3 covers state-run institutions — mental hospitals, prisons, and the like — in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.

[25] - Cutter v. Wilkinson, 544 U.S. 709, 720-21 (2005).

7388612.1:106

**RLUIPA PROVISIONS**[26]

Several provisions of RLUIPA underscore its expansive protection for religious liberty. Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc–3(g). And Congress stated that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." § 2000cc–3(c).

RLUIPA's "substantial burden" inquiry asks whether the government has substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise.

[26] - Holt v. Hobbs, 574 U.S. 352, 358 & 362 (2015).

7388612.1.107

**RELIGIOUS DIET IS REQUIRED[27]**

Plaintiff has alleged that he has been denied a scripturally *kosher*-clean religious diet based upon AR 814's provisions.

Inmates also have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.

Plaintiff claims that in order to meet his religious dietary needs, based upon scripture, he needs to be provided with meat, fowl, and fish as identified in Leviticus chapter 11; and fruits and vegetables from seed bearing plants as instructed in Genesis 1:29, that the food be organic in that chemicals-drugs have no been used on the animals, birds, fish, and only natural fertilizers used to grow the fruits and vegetables, to enable him to cleanse his body as commanded in 1 Corinthians 6:17-7:1, so that he will be permitted to be allowed into heaven, based upon the scripture that nothing unclean or drug sorcery can access heaven. Revelation 21:8, 27; 22:15.

---

27 - McElyea v. Babbitt, 833 F.2d 196, 198-99 (9th Cir. 1987)(*per curiam*).

7388612.1.108

## UNCLEAN FOODS – SUBSTANTIAL BURDEN[28]

As Plaintiff has proven, his diet of scripturally clean foods is needed to cleanse his body because his very salvation depends upon it.

It was well established in 2007, and remains so today, that government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs. Requiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available. For example, we held that a Jewish inmate had the right to a kosher diet and disposable utensils. We explained that, in the case of dietary restrictions, the inmate had no alternative means of exercising the right, whereas there were "obvious, easy alternatives" that the prison could implement.

---

[28] - Jones v. Williams, 791 F.3d 1023, 1033 (9th Cir. 2015).

7388612 1.109

## RELIGIOUS DIET-COMMON FARE AGREEMENT[29]

Plaintiff has also alleged that the Common Fare agreement that inmates are required to agree to and sign, permitting prison officials to kick them off of the religious diet pursuant to the provisions contained therein, in AR 814, is unconstitutional.

The Free Exercise Clause protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." As the Court put it more than 50 years ago, "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege."

---

[29] - Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2022 (2017).

7388612.1.110

**COMMON FARE AGREEMENT VS RELIGIOUS BELIEFS[30]**

It is Plaintiff's sincere belief that he is to give food to his enemy or drink if that enemy is in need. Romans 12:20. Just as he is required to help out a fellow believer if they are hungry also. James 2:15.

To constitute a substantial burden, a limitation of religious practice must impose a significantly great restriction or onus upon such exercise. A substantial burden need not actually force a litigant to change his practices; a violation may occur "where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs."

Does AR 814 Common Fare agreement impose a great restriction or onus upon a believer for giving away food prohibited by the agreement, but contrary to scriptural commands.

[30] - Walker v. Beard, 789 F.3d 1125, 1135 (9th Cir. 2015).

7388512.1.111

## EIGHTH AMENDMENT – ADEQUATE NUTRITION[31]

Plaintiff has alleged that the Common Fare religious diet is inadequate as it is primarily vegetarian.

The Eighth Amendment requires that prisoners receive food that is adequate to maintain health. Prisoners are to be provided food that meets or exceeds the Department of Agriculture's Dietary Guidelines. The Dietary Guidelines recommend 2400 calories daily for males aged 19-30 with a sedentary activity level, and 2600-2800 calories daily for males aged 19-30 with a moderately active lifestyle. Most prisoners who receive the amount of recreation time they were entitled to under the Eighth and Fourteenth Amendments, would fall into the "moderately active" category.

The burden is on the Defendants to prove current conditions meet the Department of Agriculture guidelines.

---

[31] - Graves v. Arpaio, 623 F.3d 1043, 1050 (9th Cir. 2010).

7388612.1.112

**HOLY DAY OBSERVANCES[32]**

Plaintiff has claimed that he was denied to keep his holy day observances on the dates they actually occur, and shown by Defendant Carpenter's memo that the practice of allowing prisoners to assemble on their holy day, was now changed to being whatever day was scheduled for that group in the chapel at that time slot. No food was to be allowed into the chapel for any service.

The law is clear that inmates are required to be allowed to observe their seventh-day Sabbath on Saturdays and eight High Sabbaths throughout the year on the dates they occur as referenced in Leviticus chapters 23 to 25; and Numbers 29:1.

[32] - Fuqua v. Ryan, 890 F.3d 838, 841 & n.2 (9th Cir. 2018).

7388612.1.113

## EQUAL PROTECTION OF FOURTEENTH AMENDMENT[33]

The Plaintiff has alleged that other religious groups who are Christian receive special holi day foods on their recognized celebrations for Thanksgiving, Christmas, and [dessert] on Easter. That he is not given traditional holy foods routinely eaten per Leviticus chapter 23 – holy day observances.

The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

Additionally, as already pointed out the Common Fare diet has been approved by a Rabbi Yisrael Rosskamm for Jewish inmates, but Messianic inmates are not accommodated a scripturally *kosher*-clean diet of organic foods causing a violation of their Equal Protection rights of the Fourteenth Amendment.

[33] - Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

7388612.1.114

## EQUAL PROTECTION OF RELIGIOUS FREEDOM[34]

Prisoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests. The Constitution's equal protection guarantee ensures that prison officials cannot discriminate against particular religions. Prisons must afford an inmate of a minority religion “a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.” Prisons need not provide identical facilities or personnel to different faiths, but must make "good faith accommodation of the [prisoners'] rights in light of practical considerations.” To succeed on an equal protection claim, a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner. (Discriminatory intent can sometimes be inferred by mere fact of different treatment).

Plaintiff "must set forth specific facts showing that there is a genuine issue" as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that such conduct was intentional.

34 - Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).

7388612.1.115

**EQUAL PROTECTION – POLICY[35]**

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. With equal protection claims, then, the first step ... is to identify the state's classification of groups and then look for a control group ... composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy. The groups need not be similar in all respects, but they must be similar in those respects relevant to the Defendants' policy.

[35] - Harrison v. Kernan, 971 F.3d 1069, 1075 (9th Cir. 2020)

7388612.1.116

**DEFERENCE TO POLICY MAKERS[36]**

We have long recognized that a jury need not defer to prison officials where the plaintiff produces substantial evidence showing that the jail's policy or practice is an unnecessary, unjustified, or exaggerated response to the need for prison security.

[36] - Shorter v. Baca, 895 F.3d 1176, 1183 (9th Cir. 2018).

7388612.1.117

**PENOLOGICAL INTEREST[37]**

Whether the government's actions are "reasonable" is often a jury issue. Whether denial of religious rights are reasonably related to a legitimate penological goal is a question for the jury.

[37] - City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 753-54 (1999).

7388612.1.118

DATED: 10-March-2023.

Respectfully Submitted,

Carlos Ruiz

Carlos Ruiz, Plaintiff *pro-per*.